## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MICHAEL ST. ONGE, individually and on
behalf of all others similarly situated,

                Plaintiff,

    v.

STANLEY BLACK & DECKER, INC., d/b/a
DEWALT,

                Defendant.

**CASE NO. _____**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff Michael St. Onge brings this action on behalf of himself and all others similarly

situated against Defendant Stanley Black & Decker, Inc., d/b/a DeWalt ("DeWalt" or

"Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his

counsel and based upon information and belief, except as to the allegations specifically

pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

      1.     This is a putative class action lawsuit regarding Defendant's false and misleading

labeling and packaging of DeWalt-brand wet/dry vacuums (collectively, the "Vacuums," as

enumerated below).  The labeling and packaging of the Vacuums are replete with false and

misleading horsepower ("HP") claims, namely that the Vacuums purportedly produce: (i) "4

Peak Horsepower," "4 Peak HP," and "4 HP," (ii) "5 Peak Horsepower," "5 Peak HP," and "5

HP," (iii) "5.5 Peak Horsepower," "5.5 Peak HP," and "5.5 HP," (iv) "6 Peak Horsepower," "6

Peak HP," and "6 HP," and (v) "6.5 Peak Horsepower," "6.5 Peak HP," and 6.5 HP"

(collectively, the "HP Claims").  Defendant misleads consumers into believing that the Vacuums

can in fact generate the claimed horsepower, even though these claims are illusory and can never

be obtained in actual use.  By doing so, Defendant is able to charge a substantial price premium

for its Vacuums on account of these fictitious HP Claims.

2.      It is physically impossible for any of the Vacuums to achieve a horsepower output

anywhere close to Defendant's HP Claims.  The true horsepower of the Vacuums is only a small

fraction of the HP Claims.  Given the wattages and amperages of the Vacuums, and pursuant to

testing performed by Underwriters Laboratories ("UL"), a prestigious third-party laboratory

specializing in electrical appliances with whom Defendant collaborated prior to the sale of the

Vacuums, the total electrical power input possible at any instance for the "5.5 Peak HP" model is

only 1200 watts.[1]  If the electrical power is perfectly converted by the Vacuums' motors, which

it is not, the total possible output power of the "5.5 Peak Horsepower" models is only about

<u>1.609 horsepower</u> (one horsepower equals about 745.7 watts).  This is <u>70.8% below</u> the claimed

"5.5 Peak Horsepower."  In fact, the standard NEMA 5-15 receptacles (*i.e.*, 3-prong wall outlets)

found in American homes, and the NEMA 5-15 plugs (*i.e.*, 3-prong plugs) found on the

Vacuums, are never rated for more than 1800 watts and 0.5 horsepower, respectively.  Thus,

Defendant's HP Claims are unobtainable, under any conditions.

3.      Defendant labeled the Vacuums with false and misleading horsepower ratings

because such representations are highly material to consumers and serve to differentiate the

Vacuums from competitors' vacuums.  Here, consumers relied on Defendant's horsepower

claims, but only received a small fraction of the horsepower promised and expected.  Consumers,

when purchasing their Vacuums, relied on Defendant's HP Claims to determine the strength and

suction ability of their Vacuums compared to others.  This number, which a reasonable consumer

---

[1] The marked amperage is the electrical power the device draws, even in the "most severe conditions of normal use [that] is not a deliberate overload."  Even with a 10% underestimate that the UL allows, the horsepower output is significantly below the representation on the products' labeling and packaging.  *See infra.*

assumes is correct, forms a substantial basis of his or her bargain, and in turn allows Defendant to command a price premium for the Vacuums over comparable models.  The higher the horsepower number, the more likely a consumer is to purchase the vacuum over another model, and the more money a consumer is willing to spend.

4.      Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's products, for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) unjust enrichment; (iv) negligent misrepresentation; (v) fraud; (vi) violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA");  (vii) violation of California's Unfair Competition Law, California Business & Professions Code § 17200, *et seq*. ("UCL"); and (viii) violation of California's False Advertising Law California Business & Professions Code §§ 17500, *et seq*. ("FAL"),

## THE PARTIES

5.      Plaintiff Michael St. Onge is a citizen of California, residing in San Jose, California.  In May of 2020, Plaintiff St. Onge purchased a DeWalt-brand vacuum, specifically the "DeWalt 12 Gallon Poly Wet/Dry Vac," which was ` as having "5.5 Peak Horsepower," "5.5 Peak HP," and "5.5 HP," Model No. DXV12P, from Amazon.com while in California.  Prior to his purchase of his DeWalt vacuum, Plaintiff St. Onge reviewed the product's advertising on Amazon and saw that the vacuum purportedly had a horsepower rating of "5.5 Peak Horsepower."  Plaintiff St. Onge relied on that labeling to choose his vacuum over comparable models.  Plaintiff St. Onge saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his DeWalt vacuum was capable of producing the claimed "5.5 Peak Horsepower" during normal use and operation.  Plaintiff St.

Onge relied on these representations and warranties in deciding to purchase his DeWalt vacuum. Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased his DeWalt vacuum on the same terms had he known these representations were not true. In making his purchase, Plaintiff St. Onge paid a substantial price premium due to the false and misleading HP Claims. However, Plaintiff St. Onge did not receive the benefit of his bargain, because his DeWalt vacuum, in fact, does not produce anywhere near 5.5 horsepower. Plaintiff St. Onge also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant. Plaintiff St. Onge further understood that the purchase involved a direct transaction between himself and Defendant, because the purchase came with Defendant's representations and warranties that his DeWalt vacuum produced 5.5 horsepower.

6.      Defendant Stanley Black & Decker, Inc. is a Connecticut corporation, with its principal place of business at 1000 Stanley Drive, New Britain, Connecticut 06053. Stanley Black & Decker manufactures, sells, and distributes DeWalt-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of DeWalt wet/dry vacuums, including the Vacuums at issue in this matter. Stanley Black & Decker manufactured, marketed, and sold the Vacuums during the class period. The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Vacuums and the HP Claims was primarily carried out at Stanley Black & Decker's headquarters and facilities within Connecticut, as is most, or all, of the Vacuums' manufacturing and assembly.

7.      The Vacuums at issue include all DeWalt models that purport to have (i) "4 Peak Horsepower," "4 Peak HP," and "4 HP," (ii) "5 Peak Horsepower," "5 Peak HP," and "5 HP,"

(iii) "5.5 Peak Horsepower," "5.5 Peak HP," and "5.5 HP," (iv) "6 Peak Horsepower," "6 Peak HP," and "6 HP," and (v) "6.5 Peak Horsepower," "6.5 Peak HP," and 6.5 HP."

8.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

10.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Defendant is incorporated and is headquartered in this District. Moreover, Defendant distributed, marketed, advertised, and sold the Vacuums to retailers and class members, which are the subject of the present complaint, from its headquarters in this District.

## FACTS COMMON TO ALL CLAIMS

A.  **The Vacuums Are Uniformly Labeled With HP Claims Ranging Between "4 Peak Horsepower" To "6.5 Peak Horsepower"**

11.      The Vacuums are uniformly labeled, packaged, marketed, and advertised with the HP Claims, which are representations of horsepower ratings ranging between "4 Peak Horsepower" to "6.5 Peak Horsepower."

5

12.    On online retailers' websites, the HP Claims are uniformly and prominently featured for the Vacuums.  For instance, Amazon.com lists Defendant's HP Claims for the Vacuums:[2]



[2] https://www.amazon.com/DeWALT-Gallon-Poly-Wet-Dry/dp/B07BYGDFKB (accessed 2/13/23); https://www.amazon.com/DeWALT-Gallon-Poly-Wet-Dry/dp/B07BY8BZ3K?ref_=ast_sto_dp&th=1&psc=1 (accessed 2/13/23). All of the Vacuums are advertised on Amazon.com in the same manner as the examples included here. The other products can be found at https://www.amazon.com/DeWALT-Gallon-Poly-Wet-Dry/dp/B07BYDT7XX?ref_=ast_sto_dp&th=1&psc=1; https://www.amazon.com/DEWALT-DXV10P-Gallon-Vacuum-Yellow/dp/B07BYH6SWX?ref_=ast_sto_dp&th=1&psc=1; https://www.amazon.com/DeWALT-Gallon-Poly-Wet-Dry/dp/B07CB9F446?ref_=ast_sto_dp&th=1&psc=1; https://www.amazon.com/DEWALT-DXV16PA-Gallon-Yellow-20-87x20-08x29-72/dp/B07CBC64DR?ref_=ast_sto_dp&th=1&psc=1; https://www.amazon.com/DeWALT-Gallon-Stainless-Steel-Wet/dp/B07BYHMJVJ?ref_=ast_sto_dp.





- Powerful 4 peak horsepower motor provides just the amount of suction needed to most any cleanup job



13.    Defendant's website advertises the HP Claims in the product name and multiple times in each prodcut description:[3]



DCV585B

**FLEXVOLT® 60V MAX* Cordless Dust Extractor (Tool Only)**



DXV12P

**12 Gallon, 5.5 HP Wet/Dry Vacuum**



DXV10P

**10 Gallon, 5.5 HP 2-Stage QUIET Wet/Dry Vacuum**



DXV16P

**16 Gallon, 6.5 HP Wet/Dry Vacuum**



DXV16S

**16 Gallon, 6.5 HP Stainless Steel Wet/Dry Vacuum**



DXV06P

**6 Gallon, 4 HP Portable Wet/Dry Vacuum**

---

[3] https://www.dewalt.com/products/power-tools/dust-management/vacuums?sort_by=field_local_launch_date&sort_order=DESC; https://www.dewalt.com/product/dxv12p/12-Gallon-55-hp-wetdry-vacuum?tid=579106 (accessed 2/13/23)



14.     These same representations are incorporated into Defendant's packaging, labeling, and advertising for the Vacuums, as seen below in retail packaging on shelves at Ace Hardware, Home Depot, and other retailers.  In fact, Defendant prominently includes the HP Claims on all four sides of the product packaging, as seen at retail:[4]

---

[4] The four images below are the sides of the box for Defendant's "DeWalt 12 Gallon Poly Wet/Dry Vac," the same Vacuum purchased by Plaintiff.









15.     However, these HP Claims are false and misleading, as the actual operating power and functionality of the Vacuums, under any condition, is only a small fraction of these representations.  For instance, Defendant's HP Claims for the "DeWalt 12 Gallon Poly Wet/Dry Vac," which was labeled as having "5.5 Peak Horsepower (5.5 Peak HP, 5.5HP)" (Model No. DXV12P) are exaggerated by approximately 70.8%: The manual for that model lists the amperage as 10 amps at 120 volts (see photo of the product manual below). This gives the vacuum a max wattage of 1200 watts (10 amps multiplied by 120 volts). As explained *infra*, 1 horsepower in electric terms is 745.7 watts.  Given the wattage, this vacuum has an actual max horsepower of 1.609 horsepower.



| PRODUCT SPECIFICATIONS | |
|---|---|
| Model | DXV12P |
| Tank Capacity | 12 Gallon |
| Power | 120 V / 60 Hz / 10 A |
| Motor | Single Stage |
| Hose | 2-1/2 in. x 7 ft. |
| Power cord | SJTW18AWG / 20 ft. Length |

| HP Claim | Actual Max HP | % Difference | Amperage, in Amps (at 120V) | Max Watts (*i.e.*, Amps times 120V) |
|---|---|---|---|---|
| 5.5 | **1.609** | **-70.8%** | 10.0 amps | 1200 watts |

16.     <u>The above calculation and comparison can be easily calculated for every model Vacuum, with one, uniform answer: the Vacuums do not – and cannot – produce the claimed horsepower.</u>

**B.  <u>Horsepower Is A Uniformly Understood And Defined Measure Of Power</u>**

17.     Horsepower is a common measure of the work power, or power output, of a device.  Both normal consumers and technical experts understand and use horsepower as a standard unit of measurement for determining the work power of a particular device.  The definition of 1 horsepower converted to electric terms is <u>745.7 watts</u>.  For example, the equivalent of 2.5 horsepower is 1865 watts, and 6.5 horsepower is 4849 watts.  For an electrical device to output a particular work power, the device must draw, or input, an equivalent power from an electrical source such as a wall outlet or circuit.[5]

**C.  <u>Household Circuits In The United States Are Limited To A Particular Total Power Output In Watts</u>**

18.     Similar to a narrow pipe that limits the flow of water, wiring size limits the amount of electricity that can flow before the wire heats up and potentially catches fire.  As such, in the United States, residential and commercial wiring is strictly and uniformly regulated.  Residential circuits are normally limited to 15 amps in 120V circuits which means that the total wattage (power) available from a standard wall outlet is 1800 watts (*i.e.*, 120V times 15 amps).[6]

---

[5] Real world devices and circuitry are inefficient, and the work power for a device will always be less than the electric power input due to losses.  *See infra*.  That said, the calculations in this complaint are highly conservative and over-estimate available power.

[6] Some circuits in the United States offer 20 amps, which would be equivalent to 2400 watts of power.  These circuits are normally for use by permanent high-draw devices such as refrigerators and have a different plug and receptacle (NEMA 5-20), which is not found on the Vacuums.

If a device, or a short circuit, tries to pull more power than the rating, a breaker (fuse) will cut power to the entire circuit.

19.     These power ratings are for the circuit as a whole.  However, in ordinary use, there may be other devices connected and using power, which would further reduce the amount of power for the vacuum before blowing the breaker (fuse).

20.     In the interest of simplicity, and as noted further in the Complaint, the power limit of 1800 watts from a household circuit is grossly exaggerated from actual use because it does not consider efficiency losses in the wiring, motor, or other sources which would reduce the wattage capabilities of the device considerably.[7]  As such, the calculations in this Complaint are highly conservative and over-estimate available power.  Even so, Defendant's Vacuums in fact only deliver a small fraction of the claimed amount.

### D.   Household Receptacles In The United States Are Limited To A Particular Total Power Output In Watts

21.     The vast majority of household receptacles (outlets) in the United States are standardized NEMA 5-15, or equivalent, as defined by National Electrical Manufacturers Association ("NEMA").[8]  NEMA 5-15 plugs and receptacles are limited to 15 amps at 120V, and thus 1800 watts.[9]  All of the Vacuums are sold with NEMA 5-15 plugs.

22.     Additionally, manufacturers, along with NEMA and the American National Standards Institute ("ANSI"),[10] routinely publish maximum horsepower ratings for standardized receptacles.  Not a single 15 amp receptacle has a rating above 0.5 horsepower.

---

[7] Electric motors are commonly between 50-90% efficient in converting electric power to work power (horsepower), depending on the load, type, quality, design, and construction of the motor, wiring, circuity, and device.
[8] NEMA is the largest trade association of electrical equipment manufacturers in the United States and sets standards for electrical equipment throughout the United States.
[9] For 20 amp circuits NEMA 5-20 plugs and receptacles, or equivalent, are used.  However, the Vacuums have NEMA 5-15 plugs.
[10] ANSI (American National Standards Institute) is one of the largest standardization organizations in the world with over 125,000 company members and 3.5 million members.

23.     It is unsafe for a device to use more power than the receptacle it is designed for. As such, manufacturers, including Defendant, could not design a vacuum that would draw more power than a household outlet is designed to provide.

### E. UL Is A Highly Reputable Safety Certification Organization, And UL Certification Is All But Required To Sell Electrical Products In The United States

24.     Federal laws and governmental regulatory agencies such as OSHA, state and local laws, common distribution and purchasing contracts, and potential safeguards against tort liability, all but require product manufacturers and distributors, such as Defendant, to test their devices with a National Registered Testing Laboratory ("NRTL") for safety.  The most common and ubiquitous NRTL is UL LLC (formally known as Underwriters Laboratories) ("UL"), a non-profit and federally approved NRTL.

25.     UL, as an independent third-party organization, tests millions of products a year in almost every industrial and consumer product category for safety.  UL creates and sets standards for particular components, such as wiring, as well as "UL Standard[s]" for entire product categories.  A UL Standard is a standardized testing regime formulated for a particular type of similar products to ensure uniform safety for all devices.  When a device is sent to the UL, and it passes the rigorous tests, the device becomes "UL Listed."  The company can then put the UL mark on its product to show the certification.  As well, the company can sell the device in jurisdictions requiring the certification (nearly the entire US market has some type of schema requiring a NRTL, such as UL, certification).

26.     One such UL Standard is "UL 1017 STANDARD FOR SAFETY Vacuum Cleaners, Blower Cleaners, and Household Floor Finishing Machines."  According to UL listings, the product packaging, and labeling, all of the models in every series of the Vacuums are uniformly UL listed and marked, and thus tested under UL 1017.

**F.** **"UL 1017 STANDARD FOR SAFETY Vacuum Cleaners, Blower Cleaners, And Household Floor Finishing Machines" Has Particular Safety Tests That Limit The Wattage And Amperage**

27.      UL 1017 tests a vacuum being certified in numerous testing conditions that mimic the most extreme real-world operating scenarios.  For instance, UL 1017 5.2 tests vacuums in conditions of "[n]ormal load [which] shall be considered to be that load which approximates as closely as possible the <u>most severe conditions of normal use but is not a deliberate overload.</u>"

28.      As well, UL 1017 5.7 dictates a "Rating" requirement which requires the "input current in amperes (and watts, if so marked) to the appliance shall not vary from the marked current (and wattage) rating by more than plus 10% and minus 15% when the equipment is operated under normal load[11] conditions."  This means that the highest power the device can ever draw, even in the "<u>most severe conditions of normal use [that] is not a deliberate overload,</u>" has been tested and confirmed by the UL to be not more than 10% of the previously mentioned wattage and amperage Defendant permanently stamps all of its products with.[12]

**G.** **Defendant Intentionally Mislabeled The Vacuums With False And Misleading HP Claims**

29.      By permanently marking the Vacuums with the UL-verified wattages and amperages, and publishing the wattages and amperages in its brochures, Defendant knew that the HP Claims were false and misleading, yet nonetheless still advertised, labeled, and packaged the Vacuums with the exaggerated horsepower claims.

---

[11] UL dictates the normal load conditions are the "most severe conditions of normal use but is not a deliberate overload."

[12] The starting current for an electric motor is also one of the highest draw scenarios.  UL 1017 5.6, in short, requires that "[a]n appliance shall start and operate normally on a circuit protected by an ordinary … fuse having a current rating corresponding to that of the branch circuit to which the appliance should be connected … and the fuse … shall not trip."  Because the Vacuums are all designed and marked to operate on 120V at less than 15 amps, even at start, the Vacuums cannot pull more 1800 watts (i.e., 120V times 15 amps), which is less than the 1865 watts even a 2.5 horsepower motor requires.

30.     The Vacuums do not, and will never be able to, meet the power requirements required for the Vacuums' advertised horsepower, as is demonstrated by:  (1) the inability for household circuits to provide the necessary power required to meet the HP Claims; (2) the inability for household receptacles to provide the necessary power required to meet the HP Claims; (3) Defendant's own wattages and amperages not meeting the power requirements necessary for the HP Claims; and (4) UL testing, certification, and marking demonstrating the maximum operating power of the devices, under any conditions, does not meet the necessary power required to meet the HP Claims.

31.     Simply put, Defendant's horsepower claims are a farce.  It is physically impossible for any consumer to experience and use the claimed horsepower of the Vacuums during use, under any conditions.  The true horsepower rating is only a small fraction of what is depicted on Defendant's labeling and packaging.

## CLASS ACTION ALLEGATIONS

32.     Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all persons in the United States who purchased a DeWalt brand vacuum sold with an HP Claim (the "Class").  Excluded from the Class are persons who made such purchase for the purpose of resale.

33.     Plaintiff also seeks to represent a subclass of all Class members who purchased the Vacuums in California (the "California Subclass" or "Subclass").

34.     Members of the Class and California Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and California Subclass number in the tens or hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through

discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

35.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include but are not limited to: whether the HP Claims are false or misleading; whether Defendant warranted the HP Claims on the packaging and labeling; whether Defendant breached these warranties; and whether Defendant committed statutory and common law fraud by doing so.

36.     The claims of the named Plaintiff are typical of the claims of the Class and California Subclass in that the named Plaintiff purchased a DeWalt vacuum in reliance on the representations and warranties described above, and suffered a loss as a result of those purchases.

37.     Plaintiff is an adequate representative of the Class and California Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

38.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and California Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### (Breach Of Express Warranty)

39.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

40.    Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

41.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted in the HP Claims that the Vacuums output between "4 Peak Horsepower" and "6.5 Peak Horsepower."

42.    In fact, the Vacuums do not, and cannot, output the horsepower in the HP Claims.

43.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class have been injured and harmed because:  (a) they would not have purchased the Vacuums on the same terms if they knew that the HP Claims were not true; (b) they paid a price premium for the Vacuums due to the HP Claims; and (c) the Vacuums do not have the characteristics, uses, benefits, or quantities as promised in that the claimed HP can never be achieved in actual use.

## COUNT II
### (Breach Of The Implied Warranty Of Merchantability)

44.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45.    Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

46.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, affixed HP Claims to each Vacuum and impliedly warranted that the Vacuums output "4 Peak Horsepower" to "6.5 Peak Horsepower."

47.     Defendant breached the warranty implied in the contract for the sale of the Vacuums because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Vacuums do not, and in fact, could never output the horsepower claimed during use by Class members as advertised.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

48.     Plaintiff and Class members purchased the Vacuums in reliance upon Defendant's skill and judgment and the implied warranties.

49.     The Vacuums were not altered by Plaintiff and Class members.

50.     The Vacuums were defective when they left the exclusive control of Defendant.

51.     Defendant knew that the Vacuums would be purchased and used without additional testing by Plaintiff and Class members.

52.     The Vacuums were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

53.     As a direct and proximate result of Defendant's breach of the implied warranty Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Vacuums on the same terms if they knew that the HP Claims were not true; (b) they paid a price premium for the Vacuums due to the HP Claims; and (c) the Vacuums do not

have the characteristics, uses, benefits, or quantities as promised in that the claimed HP can never be achieved in actual use.

## COUNT III
### (Unjust Enrichment)

54.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

56.     Plaintiff and Class members conferred benefits on Defendant by purchasing the Vacuums.

57.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Vacuums.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented in the HP Claims that the Vacuums output between "4 Peak Horsepower" to "6.5 Peak Horsepower."  These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the Vacuums at all, or on the same terms, if the true facts were known.

58.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT IV
### (Negligent Misrepresentation)

59.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

60.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

61.     As discussed above, Defendant misrepresented that the Vacuums output between "4 Peak Horsepower" and "6.5 Peak Horsepower" by virtue of the HP Claims.  Defendant had a duty to disclose the proper horsepower rating rather than misrepresented information.

62.     At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

63.     At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Vacuums, namely their true horsepower.

64.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Vacuums.

65.     Plaintiff and Class members would not have purchased the Vacuums if the true facts about the HP Claims had been known.

66.     The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
### (Fraud)

67.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

68.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

69.     As discussed above, Defendant provided Plaintiff and Class members with false and/or misleading material information and failed to disclose material facts about the Vacuums, including but not limited to the fact that they do not, and cannot, output the claimed "4 Peak Horsepower" to "6.5 Peak Horsepower."  These misrepresentations and omissions were made with knowledge of their falsehood.

70.     The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Vacuums.

71.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
**(Violation Of California's Consumers Legal Remedies Act,
California Civil Code § 1750, *et seq.*)**

72.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

73.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

74.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

75.     Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the DeWalt Products for personal, family, or household purposes.

76.     Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

77.     Plaintiff, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

78.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

79.     As alleged more fully above, Defendant has violated the CLRA by marketing that the Products were capable of an output between "4 Peak Horsepower" to "6.5 Peak Horsepower," when they do not, and cannot, output the claimed "4 Peak Horsepower" to "6.5 Peak Horsepower."

80.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

81.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

82.     As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and other Members of the California Subclass suffered injury.

83.     On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

84.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the HP Claims, as alleged above and herein.

85.     Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have paid monies for the Vacuums that they otherwise would not have incurred or paid.

86.     Plaintiff and the California Subclass Members seek compensatory damages, punitive damages, injunctive relief, attorneys' fees, and restitution of any ill-gotten gains due to Defendant's acts and practices in violation of the CLRA.

### COUNT VII
**(Violation Of California's Unfair Competition Law,
California Business & Professions Code § 17200, *et seq.*)**

87.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

88.     Plaintiff brings this claim individually and on behalf of the California Subclass.

89.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210 ("UCL") by engaging in unlawful, fraudulent, and unfair conduct.

90.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged above.  Defendant also violated the UCL's unlawful prong by violating California's CLRA and FAL, as described herein.

91.     As more fully described above, Defendant's misleading marketing, advertising, packaging and labeling of the Vacuums as capable of an output between "4 Peak Horsepower" to "6.5 Peak Horsepower," when they do not, and cannot, output the claimed "4 Peak Horsepower" to "6.5 Peak Horsepower" is likely to deceive reasonable consumers.

92.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

93.     Plaintiff and the members of the California Subclass have suffered harm as a result of the violations of the UCL because they have incurred charges and/or paid monies for the Vacuums they otherwise would not have incurred or paid.

94.     There is no benefit to consumers or competition from deceptively marketing and labeling the Vacuums.

95.     Plaintiff and the other California Subclass members had no way of reasonably knowing that the Vacuums they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

96.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Class and Subclass.

97.     Defendant's violations of the UCL continue to this day.

98.     Plaintiff and members of the California Subclass seek all available relief under the UCL.

## Count VIII
### (Violation of California's False Advertising Law,
### California Business & Professions Code §§ 17500, *et seq*.)

99.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiff brings this claim individually and on behalf of the California Subclass.

101.    Defendant violated California Business & Professions Code § 17500 ("FAL") by publicly disseminating false, misleading, and deceptive advertisements regarding the Vacuums by advertising that the Vacuums are capable of an output between "4 Peak Horsepower" to "6.5 Peak Horsepower," when they do not, and cannot, output the claimed "4 Peak HP" to "6.5 Peak HP."

102.    Defendant's false and misleading advertisements were disseminated to increase the sales of the Vacuums.

103.    Defendant should have known and did actually know that its advertisements for the Vacuums were false, misleading, and deceptive because of (1) the inability for household circuits to provide the necessary power required to meet the HP Claims; (2) the inability for household receptacles to provide the necessary power required to meet the HP Claims; (3) Defendant's own wattages and amperages not meeting the power requirements necessary for the HP Claims; (4) UL testing, certification, and marking demonstrating the maximum operating power of the devices, under any conditions, does not meet the necessary power required to meet the HP Claims.

104.    Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for Vacuums that they otherwise would not have incurred or paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendant, as follows:

a.  For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

b.  For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff, the Class, and California Subclass their reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: April 25, 2023

Respectfully submitted,

**REARDON SCANLON LLP**

By:  */s James J. Reardon, Jr.*
  James J. Reardon, Jr.

James J. Reardon, Jr. (CT 13802)
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
Email:  james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**

Frederick J. Klorczyk III*
Neal J. Deckant*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  fklorczyk@bursor.com
             ndeckant@bursor.com

*Pro Hac Vice Forthcoming

Attorneys for Plaintiff